IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07cr034(7) |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| TERRY KENDRICK, | : | |
| Defendant. | : | |

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. #121)

This prosecution stems from a lengthy investigation into dog fighting, utilizing Pit Bull Terriers ("Pit Bulls"). Among other charges, Defendant Terry Kendrick ("Defendant" or "Kendrick") is charged in Count 32 of the Indictment (Doc. #43) with the offense of being a convicted felon in possession of a firearm, in violation 18 U.S.C. § 922(g).[1] In particular, the Indictment alleges that Kendrick possessed a .44 caliber Taurus pistol ("Taurus pistol"), Model Number 2445129, Serial Number RF656423, on or about March 24, 2007. See Doc. #43 at 21. That pistol was seized when law enforcement officers executed a search warrant at the Defendant's residence at 5912 Lantanna Avenue, Cincinnati, Ohio. That

---

[1] The 30-page Indictment (Doc. #43) sets forth 47 separate Counts against nine Defendants.

search warrant had been issued by Magistrate Judge Michael Merz the previous day.  The Defendant has filed a motion, arguing that this Court must suppress that firearm, because its seizure violated the particularity requirement of the Fourth Amendment, the affidavit executed in support of that warrant did not establish probable cause to seize that firearm and its seizure was not lawful under the plain view exception to the warrant requirement.  See Doc. #121.  On September 7, 2007, this Court conducted an oral and evidentiary hearing on that motion.  In accordance with the briefing schedule established by the Court, the parties have filed their post-hearing memoranda.  See Docs. ##136, 138 and 142.[2]  The Court now rules upon the Defendant's motion, beginning its analysis by reviewing what the evidence established at that hearing.

On March 23, 2007, Task Force Officer William Myers ("Myers"), a detective employed by the Dayton Police Department and assigned to the Ohio Organized Crime Investigations Commission ("OOCIC"), executed 70-page affidavit,[3] with which he was able to obtain a warrant, authorizing officers to search Kendrick's residence at 5912 Lantanna Avenue.[4]  Therein, Myers recounted what he had been told by Agents Mike Gabrielson ("Gabrielson") and Mark Barnhart ("Barnhart") of the OOCIC, both of whom acted in an undercover capacity

---

[2]The Court afforded the parties the opportunity of filing reply memoranda, as well as their initial briefs.  The Government has not filed such a memorandum.

[3]That affidavit was Government Exhibit 1A, during the oral and evidentiary hearing conducted on September 7, 2007.

[4]With that affidavit, Myers was also able to obtain search warrants for seven other locations and five vehicles, as well as arrest warrants for Kendrick and eight other individuals.

throughout the investigation that led to this prosecution.[5]  On March 17, 2006, Gabrielson, two of Kendrick's Co-Defendants, Cornelius Burnett ("Burnett") and Larontay Bennett ("Bennett"), and a third individual, Barry Lynch ("Lynch"), traveled to Cincinnati, to meet Kendrick so that Lynch could pay forfeit money for a dog fight that was then scheduled to occur in May, 2006.  They went to Kendrick's residence at 5912 Lantanna Avenue, where Gabrielson was introduced to the Defendant.  Those present engaged in a general discussion of dog fighting and also talked about the dog fight which Kendrick was arranging, scheduled to take place the following May 20th.[6]  In addition, Gabrielson observed Lynch and Burnett pay forfeit fees to Kendrick.  Kendrick also showed Gabrielson a trophy which one of his (Kendrick's) dogs had won at a match recently conducted in Detroit.  Gabrielson attended the May 20, 2006, dog fight, which was hosted and supervised by Kendrick.

On June 19, 2006, Gabrielson and Burnett went to Kendrick's residence at 5912 Lantanna Avenue, in Cincinnati.  Burnett purchased three bottles of Dexamethasone from Kendrick.[7]  Kendrick also gave Burnett a trophy that he had won during the May 20th dog fight.

On December 13, 2006, Gabrielson went to Kendrick's residence at 5912 Lantanna Avenue.  After arriving there, Gabrielson and Kendrick discussed dog

---

[5]The Court focuses its discussion of Myers' affidavit on its portions pertaining to Kendrick and his residence.

[6]Kendrick also showed Gabrielson three issues of "Dogman Revista," an underground magazine devoted to dog fighting, and agreed to sponsor a subscription to the magazine in exchange for $50.00, which Gabrielson paid.

[7]Dexamethasone is an anti-inflammatory steroid which is given to Pit Bulls to speed up the healing of the wounds and other injuries received in dog fights.

fighting, during which the latter indicated that he had been at a dog fight in Detroit the previous weekend. Kendrick also asked the undercover agent whether he dealt in marijuana. When Gabrielson responded affirmatively, Kendrick offered to sell him that controlled substance for $110.00 per ounce. As a sample of his product, Kendrick gave Gabrielson a bag containing a small amount of the substance, which proved to be 4.60 grams of marijuana.

On December 20, 2006, Gabrielson spoke by telephone with Kendrick, asking the latter whether he could supply a half-pound of marijuana. After the Defendant had indicated that he could, Gabrielson drove to his residence at 5912 Lantanna Avenue. Kendrick told Gabrielson that one of his dogs had won a contract dog fight against Burnett's dog, "Peanut," which had been killed during the fight. Following that conversation, Gabrielson followed Kendrick into the dining room of that residence, where the latter retrieved a digital scale and, then, a large bag of green leafy material.[8] Using the digital scales, Kendrick weighed one-half of a pound of that material and placed it in a baggie, which he gave to Gabrielson in exchange for $600.00. Upon his return to Dayton, Gabrielson gave the baggie to the Miami Valley Regional Crime Lab for forensic testing. The result of the testing indicated that the baggie contained 246.52 grams of marijuana.[9]

On January 23, 2007, Gabrielson and Kendrick spoke by telephone. Defendant told the undercover agent that he had marijuana to sell, as a result of which Gabrielson and Barnhart met the Defendant at his residence on Lantanna

---

[8]That material was partially compacted, as though it had previously been pressed into brick form.

[9]246.52 grams equals approximately 8.7 ounces, slightly more than one-half pound.

- 4 -

Avenue in Cincinnati on that date. The undercover officers followed Kendrick into the dining room of that residence, where Kendrick obtained a gallon-sized baggie from a duffle bag on the floor. The baggie was filled with a green leafy material. Using a digital scale, Kendrick weighed out one-half pound of that material, which he put in a smaller baggie and sold to Gabrielson for $600.00.[10] While they were in the dining room, Kendrick indicated that he could supply bootleg copies of movies which were then being shown in theaters. After showing Barnhart the bootleg movies, Barnhart purchased four such for $20.00 each. Kendrick also took the undercover agents to his basement, where they observed 16 Pit Bulls. Fourteen of those dogs were in cages, while the other two were chained to poles.[11] In addition, the officers saw another Pit Bull chained to a register in the dining room. Kendrick explained that this dog had retired from fighting. During that meeting, Kendrick also told the officers that he possessed a .44 caliber Taurus handgun, which he kept in his residence.

On February 21, 2007, Gabrielson and Barnhart arranged to meet Kendrick at his residence at 5912 Lantanna Avenue. The officers arrived there before Kendrick. When he got there, the officers saw him remove a cardboard box from the vehicle in which he had been driven to his residence. A number of bootleg DVDs were inside that box. The three entered Kendrick's residence, and he told the officers that he could get a bootleg DVD on Monday of any movie released on the previous Friday. After examining the DVDs in the cardboard box, Barnhart paid

---

[10]The green leafy material was tested by the Miami Valley Crime Lab, which revealed that it was 233.63 grams or approximately 8.2 ounces of marijuana.

[11]In the basement, the officers also saw two slat treadmills, which were being used to train the Pit Bulls to fight.

$300.00 to purchase 98 of them.  Several of the DVDs purchased by Barnhart were of first run movies, then playing in theaters nationwide.

On March 15, 2007, Gabrielson contacted Kendrick by telephone, in order to ask about the possibility of purchasing counterfeit DVDs.  Kendrick said that he had such items for sale and invited Gabrielson to come to his residence.  After arriving at 5912 Lantanna Avenue, Gabrielson saw Kendrick get out of an automobile being driven by his girlfriend.  He removed two black plastic bags from the rear seat of that vehicle and carried them into that residence.  At the Defendant's invitation, Gabrielson followed him inside.  Once inside, Kendrick removed two DVDs from one of the bags and handed the bags to Gabrielson, while retaining the two DVDs.  The bags contained 100 counterfeit DVDs of movies, some of which were of recent releases.  The undercover officer paid Kendrick $300.00 for the DVDs.  The Defendant also told Gabrielson that he had recently obtained some high quality marijuana, which may have originated in Mexico, that he was selling for $1,400.00 per pound.  Although he did not buy any marijuana on March 15th, Gabrielson indicated that he might be interested in purchasing some in the future.

The search warrant issued by Judge Merz authorized officers to search the Defendant's residence at 5912 Lantanna Avenue for the evidence set forth on Attachment B.  Attachment B lists all manner of evidence relating to dog fighting, including Pit Bulls, as well as evidence relating to the distribution of controlled substances and relating to counterfeit movies.  In addition, ¶ 13 of Attachment B authorized the seizure of "[a]ll firearms used to protect the interest of persons

involved in dog fighting, including hand guns (sic), shotguns, rifles and ammunition."  Government Ex. 2 at Attachment B, p. 2.

During the oral and evidentiary hearing conducted on September 7, 2007, evidence was introduced concerning the execution of the search warrant at 5912 Lantanna Avenue.  Myers served as the officer in charge of the execution of a number of search warrants in Cincinnati.  Before any of those warrants were executed, he conducted a meeting with the law enforcement officials who would actually serve the warrants.  During that meeting, Myers told the officers, <u>inter alia</u>, that Kendrick had previously been convicted of a number of felonies.  In addition to being the overall supervisor of the execution of the Cincinnati search warrants, Myers was the supervising officer on the scene of the execution of the search warrant at Defendant's residence at 5912 Lantanna Avenue.  After that residence had been secured by officers of the SWAT Team from the Cincinnati Police Department, and the Pit Bulls had been removed therefrom by officials of the Humane Society, officers moved in to conduct the search of the Defendant's residence.  Myers assigned the task of searching the master bedroom located on the first floor to Detectives Rodney Barrett ("Barrett") and Douglas Hall ("Hall") of the Dayton Police Department.  In the course of complying with that directive, Barrett saw a small security lockbox under the bed.[12]  After the mattress had been moved, Barrett retrieved the box and, upon opening it, discovered the Taurus pistol, upon which the prosecution of Kendrick for Count 32 of the Indictment is based.  Barrett knew immediately that the firearm constituted evidence of criminal activity by Kendrick, because he knew that the Defendant had previously been

---

[12]Although that box was secured by a clasp, it was not locked.

- 7 -

convicted of felonies and that it was a crime for a convicted felon to possess a firearm.

As indicated, the Defendant argues that ¶ 13 of Attachment B, which provides for the seizure of "[a]ll firearms used to protect the interest of persons involved in dog fighting, including hand guns (sic), shotguns, rifles and ammunition," violated the particularity requirement of the Fourth Amendment. In addition, Kendrick argues that Myers' affidavit failed to establish probable cause to support the seizure of the Taurus pistol. He also contends that the plain view exception to the warrant requirement does not prevent this Court from suppressing that firearm. For reasons which follow, this Court rejects each of the Defendant's arguments. As a means of analysis, this Court will address the Defendant's three arguments in the above order.

The Fourth Amendment provides in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and <u>particularly describing the place to be searched, and the persons or things to be seized</u>." (emphasis added). Kendrick contends that the description of the firearms to be seized violated the particularity requirement of the Fourth Amendment, because the .44 caliber Taurus pistol was not identified in the search warrant as one of the items to be seized.[13] This Court cannot agree. In <u>United States v. Greene</u>, 250 F.3d 471

---

[13]The decision upon which Defendant places primary reliance in support of this argument is <u>United States v. Sharkey</u>, 2004 U.S. App. Lexis 24215 (6th Cir. 2004). Therein, the defendant argued, <u>inter alia</u>, that the seizure from a gun safe of firearm magazines, ammunition and papers relating to firearms violated the particularity requirement, because the warrant only authorized the seizure of guns, firearms, rifles and pistols. Although the Sixth Circuit outlined the principles applicable to the determination of whether that requirement has been violated, the

- 8 -

(6th Cir. 2001), the Sixth Circuit addressed and rejected a similar argument. Therein, the search warrant authorized the seizure of four firearms, which were specifically identified by make, model and caliber.  However, the search warrant also included a catch-all provision which authorized officers to seize any firearms used in connection with illegal narcotics trafficking.  A number of firearms were seized in addition to those that were specifically identified.  The defendant argued that the seizure of those firearms violated the particularity requirement.  The Sixth Circuit rejected that argument, noting that the "[u]se of a generic term or generic description is not a per se violation of the Fourth Amendment" and that "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought."  Id. at 477 (internal quotation marks and citations omitted).  Applying those principles herein, this Court cannot conclude that the particularity requirement was violated, because the search warrant authorized the seizure of "[a]ll firearms used to protect the interest of persons involved in dog fighting, including hand guns (sic), shotguns, rifles and ammunition," rather than the .44 caliber Taurus pistol which Defendant had told Gabrielson and Barnhart he kept at his residence.

As indicated, Kendrick also argues that Myers' affidavit failed to establish probable cause to seize the Taurus pistol.  Defendant does not contend that the affidavit failed to establish probable cause to believe that the handgun would be

---

Sharkey court did not resolve that question therein.  Rather, the court determined that the magazines, firearms and papers were lawfully seized in accordance with the plain view exception to the warrant requirement.

- 9 -

found in his residence;[14] rather he contends that the affidavit failed to establish probable cause to believe that the handgun was contraband or evidence of a crime. As Defendant points out, possession of a firearm is not, in and of itself, a crime. Moreover, Myers did not state in his affidavit that Kendrick had previously been convicted of a felony.[15]  Nevertheless, this Court concludes that Myers' affidavit established probable cause to believe that the Taurus pistol constituted evidence of a crime.  The Court begins its analysis by reviewing the standards it must apply whenever a party argues that an affidavit failed to establish probable cause for a search warrant.

In United States v. Smith, 182 F.3d 473 (6th Cir. 1999), the Sixth Circuit restated certain fundamental principles that a court must apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed, because the supporting affidavit did not establish the existence of probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." Johnson v. United States, 333 U.S. 10, 14 (1948).  In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. Whiteley v. Warden, 401 U.S. 560, 564 (1971).  Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere

---

[14]Such an argument would have been unavailing, given that Myers' affidavit establishes that the Defendant had told Gabrielson and Barnhart that he kept the Taurus pistol in his residence.

[15]Myers did indicate in his affidavit that four of Kendrick's Co-Defendants had such records.

- 10 -

> suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for … conclud[ing] that a search would uncover evidence of wrongdoing…." Id. at 236. See also United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993).

Id. at 476-77. In Illinois v. Gates, 462 U.S. 213, 230 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In Gates, the Supreme Court noted that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. When determining whether the affidavits established the existence of probable cause to believe that contraband or evidence of criminal activity would be found at the places to be searched, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." United States v. Van Shutters, 163 F.3d 331, 336 (6th Cir. 1998), cert. denied, 526 U.S. 1077 (1999). Of course, this Court also must afford great deference to the determination of probable cause made by Judge Merz who issued the search warrants. United States v. Allen, 211 F.3d 970 (6th Cir.) (en banc), cert. denied, 531 U.S. 907 (2000); United States v. Akram, 165 F.3d 452, 456 (6th Cir. 1999). See also, United States v. Graham, 275 F.3d 490, 501 (6th Cir. 2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrary).

Herein, this Court concludes that Myers' affidavit established probable cause to believe that the Taurus pistol was evidence of a crime. That affidavit sets forth numerous instances in which the Defendant sold large quantities of marijuana to Gabrielson. It is axiomatic that the possession of a firearm constitutes evidence of involvement in drug trafficking. United States v. Ware, 161 F.3d 414, 417-18 (6th Cir. 1998), cert. denied, 526 U.S. 1045 (1999). Therefore, the Taurus pistol constitutes evidence of the Defendant's drug trafficking. Moreover, given that a firearm used in such drug trafficking (as well as evidence relating to the distribution of controlled substances and counterfeit movies) could have been located in the lock box, the officers possessed probable cause to search that location for such a weapon and/or evidence.

However, even if it had concluded that the seizure of the pistol Taurus violated the particularity requirement of the Fourth Amendment or that Meyers' affidavit failed to establish probable cause to support the seizure of that weapon, this Court nevertheless concludes that the handgun was lawfully seized in accordance with the plain view exception to the warrant requirement and that, therefore, that pistol cannot be suppressed.

In United States v. Garcia, 496 F.3d 495 (6th Cir. 2007), the Sixth Circuit reviewed the standards which must be applied to determine whether the seizure of evidence was lawful under the plain view doctrine:

> The law recognizes the plain view doctrine as an exception to the warrant requirement. See Horton [v. California, 496 U.S. 128, 134 (1990)]. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). Four factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly

> seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object. Horton, 496 U.S. at 136-37; [United States v.] McLevain, 310 F.3d [434, 438-39 (6th Cir. 2002)].

Id. at 508. In United States v. Herndon, 501 F.3d 683 (6th Cir. 2007), the court explained:

> Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). The government has the burden of proving the legality of a warrantless search. United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002).

Id. at 692. Of course, in the absence of an exception to the warrant requirement, a warrant is required to permit law enforcement officers to seize an item. Garcia, 496 F.3d at 508.

Herein, applying the four factors set forth in Garcia, this Court concludes that the Government has met its burden in demonstrating that the Taurus pistol was lawfully seized in accordance with the plain view doctrine. First, that firearm was in plain view, after Barrett opened the lock box. Second, the officers were lawfully in the master bedroom in Defendant's residence when Barrett discovered that box, given that they were serving a lawfully issued search warrant at the Defendant's residence. It bears emphasis that the Defendant has not challenged the validity of that search warrant, generally; rather, he merely argues that the warrant was not valid as it relates to the Taurus pistol. Third, given that Barrett, the officer who discovered the Taurus pistol, knew that the Defendant had previously been convicted of felonies and that it was illegal for a convicted felon to possess a firearm, the incriminating nature of that handgun was immediately

- 13 -

apparent.  Fourth, officers had a lawful right of access to the Taurus pistol in the lock box, since other items the officers were authorized to search for, such as counterfeit DVDs or documentary evidence dog fighting could have been inside that container.

The Defendant argues that the plain view doctrine is inapplicable, because officers did not inadvertently discover the Taurus pistol.  See Doc. #138 at 5-6.  According to the Defendant, the plain view doctrine is applicable only when the discovery of the item seized was inadvertent.  This Court cannot agree, because an inadvertent discovery of such an item is not a necessary condition for the application of the plain view exception to the warrant requirement.  Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Weatherspoon, 82 F.3d 697, 699 (6th Cir. 1996).

Accordingly, this Court overrules the Defendant's Motion to Suppress Evidence (Doc. #121).

November 14, 2007

                        /s/ Walter Herbert Rice
                        WALTER HERBERT RICE, JUDGE
                        UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.